IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A 2012 HONDA CRV, RED IN COLOR VIN: 5J6RM4H73CL070013, NH REG 4476090 | Case No. 23-mj-224-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Benjamin Slocum, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since June 2007. I am currently assigned to the Manchester, New Hampshire field office. As part of my regular duties as a Special Agent, I investigate criminal violations relating to a broad range of immigration and customs-related statutes and have been cross-designated to investigate violations relating to the distribution of illicit narcotics as specified under Title 21 of the U.S. Code. I have been trained in drug investigations, search warrants, undercover techniques, surveillance, debriefing of informants, and other investigative procedures. Through my training, education, and experience, I have become familiar generally with the manner in which drug distribution organizations conduct their illegal activities, including purchasing, manufacturing, storing, and distributing narcotics, the laundering of illegal proceeds, and the efforts of persons involved in such activity to avoid detection by law enforcement. In the course of participating in investigations of drug distribution organizations, I have conducted or participated in surveillance, the purchase of illegal drugs, the execution of

search warrants, the use of tracking devices, debriefings of subjects, witnesses, and informants, and reviews of consensually recorded conversations and meetings.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device in or on the following vehicle: a 2012 HONDA CRV, RED IN COLOR VIN: 5J6RM4H73CL070013, NH REG 4476090 is registered to Econosave Automobile Leasing & Rentals LTD (the "Subject Vehicle").  Based on the facts set forth in this affidavit, I believe that the Subject Vehicle is being used by Todd MOBLEY aka "SMOOTH" aka "Jeremiah Excellent"  in furtherance of violating Title 21, United States Code, Sections 841(a)(1) (distribution of controlled substances) and 846 (conspiracy to distribute controlled substances) and that there is probable cause to believe that the installation of a tracking device in or on the Subject Vehicle and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3. Based upon my training, experience, and involvement in prior investigations, I know that individuals who distribute drugs often utilize motor vehicles in order to obtain quantities of controlled substances from their source of supply for distribution. I also know that individuals who are engaged in the distribution of controlled substances utilize motor vehicles in order to transport controlled substances to various locations to leave them there to store those substances as inventory for their distribution activities.  I am also aware that individuals who are engaged in the distribution of controlled substances utilize motor vehicles in order to meet with and distribute controlled substances to prospective purchasers. They also use motor vehicles to transport drug proceeds to and/or from their illicit transactions, as well as to and/or from

locations where these proceeds may be counted and stored. Because individuals who are involved in the distribution of controlled substances are highly cognizant of the presence of law enforcement, and often engage in counter-surveillance maneuvers while traveling in a motor vehicle, it is frequently difficult for law enforcement officers to effectively conduct surveillance in order to determine where the individual who is distributing the controlled substance is driving their vehicle to conduct their drug-related activities, including to pick up controlled substances, or distribute them, or store them. The presence of a tracking device on a motor vehicle which is being utilized for the distribution of controlled substances or the transportation of drug proceeds is beneficial because it allows law enforcement officers to track the movement of the vehicle effectively and to decrease the chance of detection.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. In preparing this affidavit, I have prepared reports and reviewed reports prepared by other investigators of witness interviews, surveillance, and other investigative efforts regarding this investigation. In addition, I have discussed this investigation with other officers involved in the case. Through these conversations and my own analysis of these reports, I am familiar with all aspects of this investigation. The information contained in this affidavit is submitted for the sole purpose of supplying probable cause for the issuance of an order authorizing the government, at any hour of the day or night, to install, monitor, maintain, and remove a mobile tracking device which transmits an electronic signal that can be used to detect the movement and location of the above described Subject Vehicle, and make surreptitious entry into the vehicle at any hour of the day or night to install the mobile tracking device, maintain the mobile tracking device, or remove the

mobile tracking device. This affidavit does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

5.  Over the last year or so, the Strafford County Sheriff's Office (SCSO)) has seen a significant surge with drug trafficking in the Tri-City area. Over the past several months, a number of confidential informants (CI) and sources of informants (SOI) have provided information to the SCSO and HSI Manchester regarding such activity.

6.  During the course of this investigation, SCSO have identified Todd MOBLEY aka "SMOOTH" aka "Jeremiah Excellent" as a supplier and distributor of large quantities methamphetamine and other narcotics in the Tri-City area as well as the State of Maine. MOBLEY is currently on probation from the State of New Hampshire for distribution of a controlled substance.

7.  Of particular interest, SCSO received information from a CI that MOBLEY is in possession of and receives large quantities of methamphetamine on a regular basis. According to information received by law enforcement, MOBLEY utilizes a storge facility located in Dover, New Hampshire to store his narcotics at. Law enforcement has also received information that MOBELY is involved in a large check cashing scheme utilizing narcotic users to cash fraudulent checks around the county.

8.  Through the use of a SCSO confidential informant (CI), law enforcement was able to obtain a cellular phone number ███████0798 for MOBLEY. A subpoena was used to Text Now for subscriber and toll information. On April 4, 2023, a subpoena was returned and indicted that cellular number ███████-0798 belongs to "Smooth."

9. In late May 2023, at the direction of law enforcement, the CI contacted MOBLEY on his cellular number of ███-0798. The purpose of this conversation was to arrange the purchase of 4 ounces of methamphetamine for $1,600. MOBLEY directed the CI to a predetermined location with the city of Dover, New Hampshire. The CI was accompanied to the meeting by an undercover SCSO detective.

10. Prior to the meeting with MOBLEY, the CI was searched and nothing derogatory was located. The CI was further supplied with a recording device and $1,600 in United States currency to purchase 4 ounces of methamphetamine. The CI was driven to the meet location by an undercover SCSO Deputy (UC).

11. Once at the meeting location, the CI sent MOBLEY a text message stating that they were at the meet location. MOBLEY responded and stated that he was on this way. A short time after that, surveillance units noticed the Subject Vehicle pull behind the CI and UC and park around the corner from the CI and UC's vehicle.

12. MOBLEY sent the CI a text and told them to come to the Subject Vehicle. The CI exited the UC vehicle and got into the front seat of the Subject Vehicle. The Subject Vehicle then "circled the block" and parked behind the UC's vehicle. "Circling the block" is a common tactic used by narcotic deals to conceal their illicit activity and attempt to identify law enforcement.

13. The CI exited the Subject Vehicle and returned to the UC's vehicle. At this time, the Subject Vehicle departed the area. The UC and CI also departed the area and met with surveillance units at a predetermined location. At that time, the CI stated that MOBLEY was the only occupant and was driving the Subject Vehicle. Once in the Subject Vehicle, MOBLEY

drove down the street, at which time he unzipped his pants and removed a bag that contained the requested methamphetamine and handed it to the CI and the CI handed MOBLEY the $1,600.

14. At the conclusion of the operation, the CI was again searched and nothing derogatory was located. The estimated weight of the methamphetamine was approximately 93 grams. The methamphetamine was taken by HSI agents and sent to the Customs and Border Protection Chicago Laboratory for chemical analysis. Results are pending.

15. In early June 2023, at the direction of law enforcement, the CI contacted MOBLEY on this cellular phone of ███████0798. The purpose of this conversation was to arrange the purchase of 5 ounces of methamphetamine for $2,000. MOBLEY directed the CI to a predetermined location with the city of Dover, New Hampshire.

16. Prior to the meeting with MOBLEY, the CI was searched and nothing derogatory was located. The CI was then supplied with a recording device and $2,000 in United States currency to purchase 5 ounces of methamphetamine. The CI was driven to the meet location by an UC.

17. Several hours prior to the aforementioned meeting, law enforcement established surveillance at MOBLEY'S residence. Law enforcement observed the Subject Vehicle parked near MOBLEY'S apartment. While conducting surveillance, law enforcement observed MOBLEY exit the apartment and get into the Subject Vehicle and drive away.

18. Law enforcement was able to follow the vehicle to Rochester, New Hampshire where law enforcement lost the vehicle. Law enforcement then reestablished surveillance at MOBLEY'S apartment. A short time later, MOBLEY was observed returning to his apartment in the Subject Vehicle.

19. Prior to the meeting with the CI, surveillance was established in the area of the predetermined meet location. Law enforcement was still conducting surveillance at MOBLEY's apartment on ███████ Street, Dover, New Hampshire.

20. Once at the meet location, the CI sent MOBLEY a text message stating that they were at the meet location. A short time later, law enforcement observed MOBLEY leave his apartment and get into the Subject Vehicle and drive to the meet location.

21. Surveillance units observed the Subject Vehicle Park behind the CI and UC vehicle. The CI exited the UC vehicle and got into the Subject Vehicle. MOBLEY was the only occupant in the vehicle and the Subject Vehicle then pulled away and "circled the block" again.

22. While in the Subject Vehicle, the CI handed MOBLEY the $2,000 and in return, MOBLEY handed the CI a baggie that contained the requested amount of methamphetamine. MOBLEY then dropped off the CI and departed the area in the Subject Vehicle. MOBLEY was observed returning to his apartment.

23. At the conclusion of the operation, the CI was again searched and nothing derogatory was located. The estimated weight of the methamphetamine was approximately 118 grams. The methamphetamine was taken by HSI agents and sent to the Customs and Border Protection Chicago Laboratory for chemical analysis. Results are pending.

24. On June 8, 2023, members of the SCSO spoke to the owner of ███████ located in ███ New Hampshire. This is the storge location where it is believed that MOBLEY has a unit. The owner stated that MOBLEY in fact does have 2 units. Law enforcement was able to obtain surveillance video footage for the day of the aforementioned purchase of 118 grams of methamphetamine.

25. Law enforcement observed the Subject Vehicle pull into the parking area of the storage facility prior to meeting the CI. The Subject Vehicle stayed at the location for a minimal amount of time and left. It is believed that MOBLEY went to this location prior to returning to his apartment when law enforcement lost surveillance earlier in the afternoon.

## AUTHORIZATION REQUEST

1. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the HSI or their authorized representatives, including other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the Subject Vehicle within the District of New Hampshire within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the Subject Vehicle after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; and, if necessary, to surreptitiously enter the resident parking areas of the locations specified herein to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Hampshire.

2. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an

adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

/s/ Benjamin Slocum
Special Agent Benjamin Slocum
Homeland Security Investigations

SUBSCRIBED AND SWORN TO BEFORE ME this 20th day of June, 2023.

Hon. Andrea Johnstone
United States Magistrate Judge